23-582 Jane Doe v. Franklin Square Union Free School And we have Attorney Gibson for the appellant who would like to reserve three minutes for rebuttal. Is that right? Yes, Your Honor. Thank you. And what I'll ask all the counsel to do, please come to the podium. As you will note, on the right side of the podium is a switch that moves the podium up and down. So please feel free to take a moment when you come to the podium to raise or lower the podium and adjust the microphones to ensure that we and those listening to our streaming audio can hear you at all times. So whenever you're ready, Ms. Gibson. Your Honor, may it please the Court, Sujata Gibson appearing for appellant Jane Doe and her disabled 10-year-old daughter Sarah Doe. I have reserved, as Your Honor noted, three minutes for rebuttal. I'm going to press two primary points today. The first is that the lower court erred in dismissing the statutory disability claims because there is no exhaustion requirement that applies to this type of claim. The second is that the lower court erred by dismissing the constitutional claim, the federal constitutional claim, because there is no so-called Jacobson exception to constitutional scrutiny just because a case involves public health. So as background, this- What do you mean by Jacobson exception? I thought that was just establishing the standard of scrutiny, not that it was an exception. Exception to normal tiers of scrutiny, Your Honor. So under, in Agudath Israel v. Cuomo, this court recognized that after the Roman Catholic Diocese case in 2020, in which the Supreme Court chastised the circuit and others for applying this different level of scrutiny just because a case involves public health, Agudath Israel recognized- I don't understand it as a different level of scrutiny. It's a question of whether public health creates a compelling interest, and then you apply the normal scrutiny and decide whether it does or it doesn't in the particular circumstances. I don't understand it to be an exception to anything. And, of course, in the Catholic Diocese case, there was an explicit constitutional command that set the level of scrutiny because of the First Amendment. In other circumstances, finding a fundamental right is a bit more problematic. But maybe we want to not distract you from the statutory claims, and you wanted to start with that. Well, I would like to quickly address that point, Your Honor, and I'll address it more thoroughly in my later argument. But that is precisely the point that I am making. Here, the lower court held that no scrutiny applied even to fundamental rights analysis because of a Jacobson approach, which would say that you give substantial deference even in a violation of fundamental rights. But I will get to that in a moment to identify the fundamental right. But I'll just begin briefly- Focus on the exhaustion maybe to begin with. Why don't you start there, because we do have a limited amount of time. Thank you, Your Honor. As a threshold matter, I should note that the lower court did not take issue with- did not question whether Sarah Doe presented a prima facie disability case. She is a child with disabilities. Her doctor documented this. She has a- Well, we have to assume that for these purposes, right, because the district court didn't address it. If you're correct and the district court was wrong about the exhaustion, it will go back to the district court, and the district court will have to face all those issues. We don't need to decide the whole case. We need to address whether the district court erred in the decision that it made. So let's, again, focus on the exhaustion, please. Thank you, Your Honor. Exhaustion, the two relevant cases here are Fry v. Napoleon Schools and also the Eva Luna Perez v. Sturgis Community Schools. In Fry, the court set forth the test for when ADA claims like this are supposed to be subjected to the IDEA exhaustion requirements. And the court held that it really comes down to the gravamon of the complaints and the relief sought. Where it is a case for special education services or challenging the adequacy of such special education services, even if it's brought under the ADA, if it's for equitable relief, the court held that exhaustion was required. However, under a more general kind of failure to accommodate ADA or Section 504 claim, exhaustion is not required. And there's a test that the court set forth that this case handily meets. But applying the test, when the complaint alleges that the failure to accommodate the student, Sarah's disability, deprives Sarah of her right to an education as a person with a disability, how does that not tie it to an IDEA claim? It's not as if to say the complaint doesn't allege it denied her access to the school, which could be brought by a teacher or an adult or it could be brought in another institution, another place of public accommodation. It specifically alleges a denial of education based on disability. So I think that's where I'm struggling, how that is not a claim that would then require exhaustion of the ADA claim that's connected to it. Your Honor, that's a good point. In Frye, it said that terms of art or the specific language of a complaint saying that a child is entitled to an education is not to be construed strictly, but you're really supposed to look at the actual relief sought. Here, this child is not saying she needs special education. She doesn't have an IEP. She's not seeking for any specialized services. She is simply asking to be allowed to come to school with a physical accommodation for her physical disability and her mental disability. But I guess I thought that the issue you were pressing now was the question of what relief you want. I thought the question is, because you're seeking damages, that's a remedy not available under the IDEA, and that's what gets you out from under the exhaustion requirement under Luna Perez. Am I missing something? Both, Your Honor. Yes, she is only really at this point seeking damages because any equitable relief has been needed. So back up a second. You just said both, but then you said she's only seeking damages. Both what? Well, both meets the Frye test and is also further, the Luna Perez case, further strengthens that exhaustion isn't required. She is only seeking damages at this point. And so under Luna Perez, in that case, the Supreme Court held that even in a case that's really about special education services, if damages is the remedy sought, since that is not available under the IDEA, the case can still proceed without exhausting remedies. But going back to Frye, this little girl, if she had been denied a mask accommodation at a public library, say, or a museum, she obviously could bring an ADA claim for public accommodation there, a similar claim. And if a teacher had been denied a mask accommodation, they too could bring the same claim against the school district. This isn't about whether the school provided adequate services for her as a disabled individual. This is about discrimination, and that's what I meant when I wrote that complaint, is that as a disabled individual, she is entitled to accommodation for her physical needs, just like a ramp. Excuse me. She's denied an education totally and absolutely because she can't safely attend the school, as opposed to being denied a FAPE, a free and appropriate public education, in the absence of services. Exactly, Your Honor. Yes. And it's similar to the Frye case, in that it's not about those services. It's about her access to getting into the building. And it's notable to note that the school would not even allow her to join the online education program that was available to all students, even non-disabled students at the time. There was tremendous harassment of this little girl. She was being filmed as she desperately tried to take her mask down to take breaths, and she was severely harmed over the three years that she was denied accommodation. She went from being a little girl who loved school, who was thriving, who was doing very well despite her severe health challenges, to coming home every day for these three years crying that she was terrified, she couldn't breathe, she had to sleep under an oxygen tent. Her asthma attacks became so bad, and they triggered her panic attacks. Counsel, and thank you, because I think we are familiar with the fact. Can I just ask you a technical question on this claim? If the court were to agree with you, you're asking us to find that the district court erred in concluding that you need to exhaust this claim. Let's say we agree with you. What would be the relief you would seek from us on that point? Yes, your honor, I would seek the court vacate the lower court's dismissal of the disabilities claims. And then what would be the next step for you in the district court? Remand for further proceedings. The further proceedings would be whatever is necessary to decide the merits. It's back to the district court to put the exhaustion issue aside and decide the merits, whether that's via summary judgment motion, trial, whatever it takes under the ADA. Yes, your honor. This little girl is just seeking her day in court. We understand. Thank you very much. You've reserved three minutes for rebuttal. Why don't we hear from counsel for the appellate. We have attorney Weisbord. Is that right? Yes. Good morning. May it please the court. I'm Chelsea Weisbord, and I represent the defendant appellee, Franklin Square Union Free School District. I am going to begin with the failure to accommodate claims. It's undisputed that the plaintiff never complied with the exhaustion requirements of the IDEA before filing a federal complaint. And the issue is whether or not she was required to. And I would submit that she was. Initially, regarding the Fry case that opposing counsel mentioned, the amended complaint alleges the denial of a free, appropriate public education of FAPE. And those allegations cannot be taken back. They're in the complaint, clearly pled. So under the Fry test, the IDEA exhaustion requirements would be applicable to these particular failure to accommodate claims. You can't withdraw a request for relief? I'm sorry? You can't withdraw a request for relief that's in your complaint? Well, it's a verified complaint stating that this plaintiff- Well, it's verified with respect to the facts. That means the plaintiff is swearing to the truth of the allegations. But requests for relief can be amended away, right? Right, but she's alleging- And this whole thing was made up by the district court anyway in the first instance. The district court is the one that suggested that we shift focus from the constitutional issues to the ADA. And then the complaint was amended to bring that up. But speaking of the Fry case, it's interesting that that case is not mentioned in your brief. It was rather heavily relied on by the plaintiff to the point where if you look in the table of cases, it can't even list the pages where they talk about Fry. It just says Passim everywhere throughout the brief. And yet it's not addressed on your side? So it was addressed in the moving papers. I'm going to- You mean in the district court? Yes, and I'm going to- You know what, we read these things. No, I know. Primarily. And then it requires some legal archaeology for us to go back to what's in the district court. Yes, but regarding the two questions that the Fry case asks, the request for an accommodation for a mask exemption was requested through a 504 plan. And a committee on special education convened to review that accommodation request. And that is a process that's unique to students. That's not something that you could request if you're going to a movie theater or a library. But that's part of the Rehabilitation Act, right? 504 is part of the Rehabilitation Act, isn't it? Yes. So it's not part of the IDEA? Well, in order- So in this instance, when you're seeking relief under the ADA or Rehabilitation Act, where that relief can also be provided by the IDEA, then those exhaustion requirements do apply to claims brought under those two statutes. What do you do with Luna Perez? So the amended complaint is primarily a request for equitable and declaratory relief. But not anymore? Well, just because that portion has been mooted doesn't change the fact that when that complaint was filed, that was the primary intention. In fact, the document itself is called Amended Complaint for Injunctive and Declaratory Relief. And that was the crux of the case. Why don't we deal with this this way? Let me ask you a hypothetical question. And I understand it's hypothetical. Assume she had only sought damages, that the complaint was identical in every way, except the only form of relief originally sought was damages. How would Luna Perez apply? Under that circumstance? Yes. If it was seeking compensatory damages for a prior denial, then that case would apply. So if we dismissed, if we affirmed the dismissal here, and the plaintiff came back with a complaint, a new complaint, sounding only in damages, would it be barred by the statute of limitations? Is that going to be the argument? Or is this something that is basically a meaningless exercise where the same claim could now be brought and we'd be right back here? Or rather, we'd be right back where we would send it if the plaintiff prevails in this appeal. So what is the point, really? The point of? Yeah. I mean, all that we're doing is wasting time, right? If we dismiss this complaint here and have her file a new complaint, seeking only damages, that doesn't require exhaustion, and then the district court is right back where we could put it tomorrow. And we could even do it right now, right? We could remand it with leave to file amended complaint. It wouldn't even require filing of a new action. Well, the ADA and the Rehabilitation Act, they don't provide for emotional damages, and it's not clearly articulated in the complaint what the damages are. Well, maybe she wouldn't get damages. Maybe the whole complaint is a loser. Maybe her degree of asthma is not, in fact, a disability. I don't know the answers to any of those questions, but those are merits questions, and we haven't even reached the merits because of this exhaustion requirement. So, yeah, I mean, who knows how the case comes out in the long run. The question is whether it's barred at the threshold by virtue of an exhaustion requirement. And, you know, I look at the Frye case. I understand that one of the things that Frye does talk about is what do they ask for, and what they ask for here is a little ambiguous, and it's a little hard to distinguish the difference between saying, I'm not getting any education because you won't let me in the building unless I'm tortured while I'm there, and I'm not getting the kind of education that a disabled person needs. But, I mean, are there cases, are there IDEA cases where the claim is build a ramp as opposed to, you know, give me a special accommodation that would apply to a disabled person in any public setting? Sure. I don't know about build a ramp, but in- Well, how about bring a seeing eye dog? That was the case in Frye. And the court said, well, that's clearly an ADA access kind of claim. It's not really a request for any special services from the school. And, well, we don't know what the, it was remanded to consider what was really asked for below, but that was considered by the court a kind of prototypical ADA, non-IDEA claim, and I'm having a hard time distinguishing what the plaintiff is asking for here from, I've got a wheelchair. The only high school in town has a giant stairway to the only entrance. You've got to do something about it. The same claim that could be brought by a teacher or a parent who needs to attend school functions or anybody who's not a student. Sure. Well, in Martinez v. New York City Department of Education, which is cited in our brief, I can provide the citation if you'd like. No, it's cited in the brief we have. Okay. Well, in that case, that involved a student who had a nut allergy and wanted a reasonable accommodation to that effect, and in that case, the court held that their ADA and Section 504 claims were subject to the IEDA exhaustion requirement. That's the same district court that decided this case. That's not binding on us. No, but I think it is a good, instructive case. What you're saying is there are cases in which courts have found that you can bring an IDEA claim, I guess, for some of these kinds of relief. That's your point, right? Yeah, I mean, the case law holds that just because you don't use the word IDEA and you bring it under an ADA or Rehabilitation Act claim, if it's requesting the type of relief that's provided under the IDEA, then those exhaustion requirements, they come over to the other claims. Can I ask you, because you've only had 40 some odd seconds left, I would like to get your response to one other issue, which is whether the district court made a mistake when it dismissed the plaintiff's New York State human rights law claims for failure to meet the notice of claim requirements. I had thought that there was a pretty clear letter that Doe alleged that her attorneys sent to the district on June 16th, 2021, claiming that the district had violated her rights through their policies and that they were violating the child's constitutional statutory rights and asking for an exemption from the mask mandate. What is insufficient about that letter that did not give proper notice of the claims? Absolutely. So under Education Law 3813, first of all, if a letter were to be construed as a notice of claim, it would have to include certain information. And one of the things that's missing from those letters is any type of monetary demand or explanation of compensation. And then also it's lacking the, first of all, the New York State human rights law. It does not reference that. And the second issue is that the letter was not presented to the Board of Education, which is the governing body. It was sent to the superintendent. That's a fatal defect, and courts will dismiss, will hold that a letter is not a notice of claim if it was not properly presented to the governing body. And third, the Education Law requires a verified claim, and these letters are not even signed by the plaintiff, much less verified. They're attorney letters. So with those three issues, those letters just do not constitute a notice of claim, and it's undisputed that no actual notice of claim was ever served prior to the commencement of the lawsuits. Could I ask one further question about the exhaustion? I always thought that the whole point of the exhaustion requirement in the IDEA, which is a very troublesome requirement because it often means that a parent is appealing for the whole year that the plan is in effect, and by the time they're told that, yeah, you were right all along. You should get these services. Then it's next year, and you have to go through the whole process again for another school year. But the point of it is that we as federal judges don't know much about whether a child with autism needs to have a classroom with only six people to a teacher or whether 12 will do. And the exhaustion requirement submits those claims to experts in educational policy. But experts in educational policy don't necessarily know about building ramps and bringing service dogs and mask requirements, and those are cases that the courts are very familiar with from other ADA contexts involving other kinds of cases. So I'm having a little trouble understanding even why the exhaustion requirement would make sense in a case like this, where it does make some sense despite its costs when the issue is, we're seeking this kind of instruction rather than that kind of instruction, which is good for the educators. So first of all, with respect to this case, the requests for an accommodation were reviewed by the district's physician. It wasn't decided by the school itself. I understand, but if it's going to be appealed, it's going to be appealed to a state hearing officer and then a state review officer, the IHO and the SRO in the state. And the whole point is those people understand education better than we do. I'm not sure that they are the most, a lot is going to be gained by having them address the public health issues, which as you say, there's a record now. We've got doctors talking about this, evidently on both sides of the case. That's the kind of stuff courts do all the time in ADA cases. Yes, and this case is also dealing with a delicate balance between the safety of the students and the staff and visitors in the building. Here's another thing about the accommodation. This sort of goes a little more to the merits than maybe we're up to at this point. They let her wear a fake mask, which as far as I can tell, did nothing for the public health because it's mesh and is not going to keep the germs out. If they're willing to do that, what's the problem with not having a mask at all? Because this is like not having a mask at all. The only thing it does, at least according to the plaintiff's factual assertions, is farm her. Sure. So the district physician, and I believe this is that this is in the record. I'm staying away from the preliminary injunction records, but the district physician reviewed the doctor's notes, spoke to the plaintiff's physician and also reviewed CDC guidance, which says that there are certain types of impairments that would prohibit somebody from wearing a mask. But asthma is not one of them. And in fact, encourages people with asthma and says that they should wear masks. No, I get it. That's the pure merits of whether this is an appropriate accommodation for, and it may even go to whether she has a disability or whatever. But I'm just, I ask about the mesh mask. I mean, how can that be an appropriate accommodation that you're willing to give when it is the functional equivalent of no mask at all, except to whatever extent having something on her face is awkward and causes rashes and whatever else is alleged here? So with respect to the mesh mask, I also wanted to address the district court's dismissal of any conduct that occurred after that accommodation was provided. It was, there was an interactive process. Yeah, I get it. And to the end of it, the district accommodated- A settlement that failed, right? Because they reserved the right, in effect, to let's try it out for two weeks, and if it doesn't work, we'll be back in court. But it was for months. It was months before the amended complaint was filed, and there was an allegation that it was ineffective. But for months, it worked. Okay, and we've kept you up considerably past your time. Thank you very much. We have your full argument. Why don't we turn back to council for the appellant. Attorney Gibson, you've reserved three minutes, and we're going to hold you pretty strictly to those three. Thank you, Your Honor. Responding directly to one of the allegations, there is nothing in the complaint that says that the plaintiff is seeking a free and appropriate public education. What she says is that as a disabled student, she is entitled to an education just as every other student is. And that goes to the discrimination and access issues that are dealt with by Section 504 and by the Americans with Disabilities Act. Can I ask you just a question of clarification before your time runs out? To be clear, I want to make sure. I understand now from your reply brief, you are abandoning any claims for declaratory relief. Am I correct? Because when you briefed, your analysis under the ADA suggests that you were not. Under the IDEA exhaustion in your brief, you were suggesting that you were not. But in your reply brief, you said you are abandoning any claim for declaratory relief. Is that correct or not? She hasn't challenged the claims for injunctive relief, but I believe to get nominal damages, there is a declaratory component that's not moot. It's not equitable relief, though. She's not seeking equitable relief. What type of declaratory relief are you seeking, then? Can you explain that? Because that's an inconsistency in your position. Yes, Your Honor. That the district violated the Americans with Disabilities Act. That's not really a declaratory judgment. I mean, if you want to get damages, right, you always have to have a finding of liability or whatever it must be. But a declaratory judgment is a term of art as a specific type of relief that one seeks. Are you seeking that as distinct from damages, which of course would be premised on a filing of liability in the violation of a law? No, Your Honor. Are you looking for a declaratory judgment as a declaratory judgment? No, Your Honor. Thank you for the clarification. That's precisely the difference. We're looking for a finding of liability. Damages only. With damages, right. Because at this point, there is no equitable relief available. Thank you. And to close, this is a little girl that was caught in the crosshairs of politics. And this case should not be about politics. This should be about her health. And under the disability statutes, a disabled individual is protected so that their unique physical needs can be met. And also under the U.S. Constitution, there is a well-established fundamental right to refuse medical treatment even when it saves your life. But when that medical – Why is this medical treatment? Sorry, medical intervention. The FDA defines masks used for the purpose of virus mitigation as a medical intervention that needs to be licensed or authorized by the FDA. This goes to the whole Jacobson exception issue. Public health measures are somewhat different than treatment measures or things that require bodily intrusion. And I understand arguments about vaccines as being things that are medical treatment. But arguments about masks are directed at the public and they don't actually impose what I would normally regard as medical treatment on somebody. It's like a quarantine kind of rule. Well, Your Honor, I would – A quarantine rule that might restrict people's movement. That's a significant type of intrusion. But it's not a medical treatment. Your Honor, I would disagree because this medical intervention was causing this child harm. And what the district court acknowledged is that there are no long-term or even short-term safety studies on the impacts of children, especially with children with these underlying disabilities, of using a mask on their face, which impedes their breathing. It would be like an orthopedic shoe insert, for example, is a medical intervention. And it might harm certain people. You know, it may not be – It wouldn't have any public health consequences. It would be just about saying, we think this is good for you. Absolutely, Your Honor. There's a lot of different scenarios. And that can be addressed at strict scrutiny. That's when you say there was a medical right to avoid a medical intervention that is experimental in nature and that a doctor has said will harm this child. But if the school really needs her to do so in order to attend, they can advance their arguments for safety. I think we're now into an issue that was not raised by the other side, and this is rebuttal, not bringing up the issue. I think we have your arguments on both sides. So thank you both very much. We will take the case under advisement. Thank you. Thank you very much, Your Honors.